UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Angela Sanchez-Knutson**,

        Plaintiff,

                              Case No. 14-61344-CIV-DIMITROULEAS

v.

**Ford Motor Company**

        Defendant.
_____/

## DEFENDANT FORD MOTOR COMPANY'S MOTION TO STRIKE OPINIONS AND ANALYSIS OF NON-DISCLOSED EXPERT COLIN WEIR AND SUPPORTING MEMORANDUM OF LAW

Plaintiff's belated disclosure of Colin Weir – a new expert witness masquerading as a fact witness – months after the deadline for expert designations passed and discovery closed, is a flagrant violation of the Federal Rules of Civil Procedure and this Court's orders. Under Rule 37(c), failure to timely identify a witness *requires*, at a minimum, that the witness's evidence be excluded, unless the failure is "substantially justified or is harmless." Fed. R. Civ. P. 37(c). Because Plaintiff's failure to timely disclose Weir is neither, Ford moves, pursuant to Rule 37(c), to strike all evidence supplied, analysis performed, and testimony offered by Weir in this case.

## I.   BACKGROUND

On November 13, 2015, in accordance with the Court's most recent scheduling order, (ECF No. 160), Plaintiff served on Ford the reports of her three experts in this case: Steven Gaskin, the damages expert, David Renfroe, the engineering expert, and David Penney, the toxicologist. Discovery closed on January 14, 2016. (ECF No. 160). Subsequently, and also in accordance with the Court's scheduling order, Ford filed *Daubert* motions to exclude each of these three experts on February 15, 2016. Of relevance to the present discovery dispute was Ford's *Daubert* motion to exclude the testimony of Steven Gaskin. (ECF No. 182). In that motion, Ford argued, *inter alia*, that Gaskin's testimony should be excluded because of his inability (and admitted lack of qualification) to ascertain the average purchase price of the class vehicles, a figure which, according to Gaskin, was critical to the ultimate calculation of classwide damages.

In response to this argument, Plaintiff's opposition stated – for the first time in this litigation – that Gaskin's analysis would in fact comprise only a piece of the damages calculations. Damages would be ultimately calculated, Plaintiff explained, by multiplying Gaskin's diminished value percentage by the total amount of the *revenue* Ford received from sales of its 2011-2015 Explorers to authorized dealerships.[1] Notwithstanding that the revenue generated from the sale of class vehicles by Ford to its dealers is a transaction entirely independent from any sale or lease transaction between dealers and class members, Plaintiff asserted, without foundation or explanation, that she had "used Ford's revenue from its dealers as a proxy for the purchase price [paid by consumers]." (Pl.'s Opp'n to Ford's Mot. to Exclude

---

[1] This revenue information was produced by Ford on January 11, 2016 in the form of several spreadsheets that were designated as covered by the Stipulated Protective Order entered in this case.

Gaskin, filed under seal Mar. 3, 2016, p. 7). In explaining how she derived a final revenue figure from the spreadsheets containing revenue data that had been produced by Ford, Plaintiff stated only that she "sorted all of this information in a way that derived an appropriate sales price for the sold vehicles and lease price for the leased vehicles. Plaintiff did nothing more than sort the information provided by Ford." (Pl.'s *Daubert* Opp'n, p. 4).

Leaving aside the fact that the revenue "sorting" that Plaintiff conducted could never generate the figures required for an accurate damages calculation, Plaintiff's assertion that *she* performed this "sort" is false, which Ford discovered when it received Plaintiff's Rule 26(a)(1) Second Supplemental Disclosures. These disclosures were served on March 22, 2016, more than fourth months after Plaintiff's expert designation deadline, two months after the close of all discovery, and nearly three weeks after Plaintiff's *Daubert* opposition describing her "sorting" was filed. In these disclosures – and for the first time in this litigation – Plaintiff identified Colin Weir as a person with information "concerning the merging and organizing of the various Ford-produced spreadsheets used to calculate damages." (Pl.'s Second Supp. Disclosure, p. 9, Ex. 1 to Decl. of J. Phillips).

In response to an inquiry from Ford's counsel about how a third-party non-expert supposedly had access to Ford's protected revenue data, Plaintiff's counsel stated that "Colin [Weir] has signed the confidentiality agreement and has agreed to be bound by its terms." (3/22/16 E-mail from J. Lewis to J. Dewey, Ex. 2). In a follow-up response, Plaintiff's counsel reiterated: "[t]hree spreadsheets were sorted . . . and, as I've indicated, the person who sorted has signed the agreement to be bound by the protective order." (3/23/2016 E-mail from J. Lewis to J. Conigliaro, Ex. 3). At the March 25, 2016 oral argument on all Ford's pending *Daubert* motions, Plaintiff's counsel again admitted that Plaintiff herself had not "sorted" Ford's revenue data, contrary to her *Daubert* opposition assertions: "Now, it's true that Colin Weir performed that sort. I can't do that. I don't know how to do that kind of sort." (*Daubert* Hr'g Tr. at 29, Ex. 4).

Plaintiff's counsel, and Plaintiff herself, do not understand and did not perform the revenue "sort" because the manipulation and analysis of Ford's revenue data is the type of analysis that must be done by an expert. Indeed, the very conclusion that revenue generated from one transaction can serve as an appropriate "proxy" for the average purchase price of vehicles in an entirely separate transaction is not a statement of fact but one of opinion that must be founded on some relevant expertise. As it happens, Colin Weir is an expert who testifies routinely on

-2-

damages calculations in class action litigation. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 943-44 (C.D. Cal. 2015) ("Colin Weir is plaintiffs' economic expert . . . Weir has testified as an expert in federal and state courts, and before the Federal Communications Commission and state regulatory commissions . . . Weir opines that: 'it is possible to determine damages . . . by applying the scientifically valid economic methodology of hedonic regression to common, class-wide, aggregate historical retail price [of] Wesson Oil."); *see also Ebin v. Kangadis Food Inc.*, No. 13-civ-2311 (JSR), 2014 WL 737878, at *1 (S.D.N.Y Feb. 25, 2014) ("The report of damages expert Colin Weir details several models for calculating damages for this alleged misrepresentation . . .").

Further supporting the obvious conclusion that Weir has been retained as an undesignated expert in this case is the fact that he signed the Stipulated Protective Order and was given access to Ford's proprietary information. The terms of the Stipulated Protective Order are clear: the ***only*** possible scenario in which Weir could be a signatory and privy to the protected information is if he is a retained expert in the case. (*See* ECF No. 55 at p. 6, § 4(b)(iv)). Thus, Plaintiff's acknowledgement that Weir signed the protective order confirms his status as an expert.

## II.   ARGUMENT

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "Rule 37(c)(1) gives teeth to [Rule 26(a)(2)'s] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F. 3d 1101, 1106 (9th Cir. 2001). Indeed, Rule 37(c) "***mandates*** that a trial court sanction a party for discovery violations in connection with Rule 26 . . . unless the violation was harmless or substantially justified." *Young v. Lexington Ins. Co.*, 269 F.R.D. 692, 693 (S.D. Fla. 2010) (emphasis added) (internal citations omitted) (granting defendant's motion to strike where plaintiffs' expert disclosures were three months overdue, the discovery deadline was ten days away, and all *Daubert* deadlines had passed). The burden here is on Plaintiff to show that her failure to timely and properly disclose Colin Weir was substantially justified or harmless. *See Porto Venezia Condo. Ass'n, Inc. v. WB Ft. Lauderdale, LLC*, No. 11-60665-CIV, 2012 WL 7636003, at *4 (S.D. Fla. Sept. 19, 2012) (Snow, J.)

Pursuant to Rule 37(c), the Court should strike all evidence generated by Colin Weir's analyses of Ford's revenue data. Weir is an untimely and improperly disclosed expert witness whose work and testimony Plaintiff is attempting to insert into this litigation through a Rule 26(a)(1) supplemental disclosure made *after* the expiration of all significant deadlines.

First, expert disclosures are made in accordance with Rule 26(a)(2) and *not* Rule 26(a)(1), the latter of which governs the initial disclosure of potential fact witnesses. Thus, Plaintiff's inclusion of Weir – who lacks any personal knowledge of the subject matter of this case outside of whatever analysis he was asked to do by Plaintiff, based on materials supplied by Plaintiff – in a Rule 26(a)(1) disclosure is improper under the Rule. More importantly, the deadline for Plaintiff's expert disclosures was November 13, 2015, more than four months prior to Plaintiff's disclosure of Weir. Therefore, even if Weir had been disclosed as an expert in accordance with Rule 26(a)(2), which he was not, the disclosure would have been more than four months late. Indeed, not only has Plaintiff's expert designation deadline passed, but so has Ford's expert deadline, all *Daubert* motion deadlines, and the scheduled discovery period. Substantive pretrial motions are due in less than one months' time. As this Court noted in *Young v. Lexington Ins. Co.*, "[plaintiffs] have the burden of prosecuting their case and if they had not already had their experts evaluate damages prior to filing suit to determine a good faith basis for this action, they should have been developing expert testimony well in advance of the required disclosure deadlines." 269 F.R.D. at 694. It is apparent that in the present case, given the passage of multiple expert-related discovery and motion deadlines, Plaintiff has similarly failed to exercise diligence in developing her damages theory.

This brazen failure to comply with the requirements of both Rule 26(a) and this Court's scheduling order is neither justifiable nor harmless. Ford anticipates that Plaintiff may attempt to defend the untimeliness of her disclosure of Weir by arguing that she did not receive the revenue data spreadsheets from Ford until a few days prior to the close of discovery. To this argument Ford's response would be twofold. First, Plaintiff received the revenue data spreadsheets from Ford near the end of discovery because she did not ask for it until less than two months before the discovery cutoff. Second, and more importantly, Plaintiff did not request this revenue data from Ford until November 24, 2015 (the day before Thanksgiving) which was eleven days *after* her expert disclosure deadline. Thus, to the extent Plaintiff claims that she somehow needed to evaluate the revenue data before retaining an expert to "sort" it, her failure to request these

documents until after the expiration of her expert deadline precludes any argument that but-for the supposed delay in Ford's production, Weir could have been timely disclosed.

Finally, Plaintiff's delayed and incomplete disclosure of Weir has severely prejudiced Ford's defense of this case. Ford sought documents and information pertaining to Plaintiff's damages theory in its first Requests for Production of Documents, served on September 19, 2014 and its first set of Interrogatories, served on July 28, 2015. (Ex. 5). Plaintiff's response to both discovery requests was that they were premature and covered material that would be the subject of expert discovery. *Id*. During the class certification briefing, Plaintiff's only explanation of her damages theory was "[t]he framework for this damage analysis is described in the accompanying Declaration of Steven Gaskin." (ECF No. 114 at 8). Although Gaskin's declaration was submitted in support of her class certification reply brief, Plaintiff refused to designate Gaskin as an expert under Rule 26 until the Court issued a scheduling order with explicit expert deadlines.[2] When that deadline arrived, Gaskin was the ***only*** damages expert disclosed to Ford. Ford has subsequently built its entire defense to Plaintiff's damages case on the assurance, through Plaintiff's discovery responses and representations to this Court, that Gaskin's analysis and opinions constitute the entirety of that case.[3] To spring an additional damages expert and a newly-described damages theory on Ford at this late date would cause extreme prejudice and should not be permitted.

### III. CONCLUSION

For all the reasons stated above, Ford respectfully requests that the Court strike any and all evidence generated by Colin Weir, including, but not limited to, the results of any "sorting" of Ford's revenue data and any opinions on the suitability of this revenue amount as a "proxy" for average consumer purchase price.

---

[2] In this scheduling order, the Court faulted Plaintiff for her refusal to produce her expert reports, finding Plaintiff's conduct "presumptuous" and that "Plaintiff has now placed the Court in a position whereby it must again extend all of its pretrial deadlines and reset the trial, or likely dismiss this action because Plaintiff will have no expert reports upon which to rely." (ECF No. 160 at 1).

[3] Indeed, Gaskin's report concluded with the assertion that his methodologies enabled him to calculate an absolute diminished value per vehicle ($21,000 for exposure to exhaust smell, or $30,000 for exposure to dangerous levels of exhaust gas), and it gave absolutely no indication that his analysis would need to be combined with the analysis of another expert in order to provide a total damages amount.

April 14, 2016

Janet L. Conigliaro
JConigliaro@Dykema.com
Admitted *Pro Hac Vice*
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, Michigan 48243
Phone: (313) 568-5372
Fax: (855) 262-6803

Fred J. Fresard
ffresard@dykema.com
Admitted *Pro Hac Vice*
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
Phone: (248) 203-0700
Fax: (248) 203-0763

Paul V. Lankford
plankford@lclaw.com
Admitted *Pro Hac Vice*
Lankford Crawford Moreno & Ostertag LLP
1850 Mt. Diablo Boulevard, Suite 600
Walnut Creek, California 94596
Phone: (925) 300-3520
Fax: (925) 300-3386

Respectfully submitted,

/s/ J. Trumon Phillips
Fredrick H.L. McClure
Florida Bar No. 147354
fredrick.mcclure@dlapiper.com
J. Trumon Phillips
Florida Bar No. 0084568
trumon.phillips@dlapiper.com
DLA PIPER LLP (US)
100 North Tampa Street, Suite 2200
Tampa, FL 33602-5809
Phone: (813) 229-2111
Fax: (813) 229-1447

Joel A. Dewey
Joel.dewey@dlapiper.com
Admitted *Pro Hac Vice*
Jeffrey Yeatman
Jeffrey.yeatman@dlapiper.com
Admitted *Pro Hac Vice*
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Phone: (410) 580.3000
Fax: (410 580.3001

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE (electronic filing)

**I HEREBY CERTIFY** that on April 14, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served via e-mail this day on all counsel of record or pro se parties identified on the Service List below.

/s/ J. Trumon Phillips
Attorney

## SERVICE LIST

John J. Uustal, Esq.
jju@kulaw.com
Jordan M. Lewis, Esq.
jml@kulaw.com
Michael A. Hersh, Esq.
mah@kulaw.com
Kelly Uustal, PLC
700 S.E. 3rd Ave., Suite 300
Fort Lauderdale, Florida 33316

**Attorneys for Plaintiff**

Fred J. Fresard
ffresard@dykema.com
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, Michigan 48304

**Attorney for Defendant**

Paul V. Lankford
plankford@lclaw.com
Lankford Crawford Moreno & Ostertag LLP
1850 Mt. Diablo Boulevard, Suite 600
Walnut Creek, California 94596

**Attorney for Defendant**

Fredrick H.L. McClure
fredrick.mcclure@dlapiper.com
J. Trumon Phillips
trumon.phillips@dlapiper.com
DLA PIPER LLP (US)
100 North Tampa Street, Suite 2200
Tampa, FL 33602-5809

Joel A. Dewey
Joel.dewey@dlapiper.com
Jeffrey Yeatman
jeffrey.yeatman@dlapiper.com
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600

**Attorneys for Defendant**

Janet L. Conigliaro
JConigliaro@Dykema.com
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, Michigan 48243

**Attorneys for Defendant**