IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Angela Sanchez-Knutson, individually, and
on behalf of all those similarly situated,

                                                        CASE NO.  14-cv-61344 WPD

      Plaintiff,

v.

Ford Motor Company,

      Defendant.
_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT FORD MOTOR
COMPANY'S MOTION TO STRIKE**

                                             Jordan M. Lewis (FBN: 97997)
                                             Michael A. Hersh (FBN: 56019)
                                             John J. Uustal (FBN: 73547)
                                             Kelley Uustal, PLC
                                             700 S.E. 3rd Avenue, Suite 300
                                             Fort Lauderdale, Florida 33316
                                             Telephone:    (954) 522-6601
                                             Facsimile:    (954) 522-6608
                                             Email:           jml@kulaw.com
                                             Email:           mah@kulaw.com
                                             Email:           jju@kulaw.com

                                             *Attorneys for Plaintiff*

Defendant Ford Motor Company's latest motion teeters on the following false premise: It argues that Colin Weir, whom plaintiffs retained as a non-testifying consultant, is offering expert testimony of the type contemplated by Fed. R. Evid. 702 because (at the request of plaintiff) he sorted spreadsheet data produced by Ford. *This is false. To the extent that Weir's testimony is required, it is testimony contemplated by Fed. R. Evid. 1006.*

This entire exercise is triggered by two surprising facts about the auto industry: *First*, there is no available listing or record of the actual price paid by consumers for new cars.[1] *Second*, Ford has no record of the consumers who purchased its new cars. Rather, Ford records the VIN numbers of the cars it sold to its authorized dealers.[2] It has always been plaintiff's intention to apply the diminution in value as a percentage against Ford's sale figures to derive total class damages.[3] Here's what was required.

It starts with the 38,946-line spreadsheet representing the VIN numbers of Explorers model years 2011-2015 that Ford says it sold to authorized Florida Ford dealers. That spreadsheet (too large to attach here) was produced on November 6, 2015 for purpose of distributing class notice. Using outside third-party vendors, plaintiff's claim administrator linked 45,827 names and addresses to the produced VIN number list.[4] Next, in response to a discovery request, Ford produced on January 13, 2016 (the day before discovery in this case closed) a 34,198-line spreadsheet that, by VIN number, included various financial information concerning its sale to the dealers of the Explorers, including the net revenue to Ford for each vehicle sold. (Again, this spreadsheet is too large to attach). And finally, Ford's subsidiary, on February 9, 2016 (almost three weeks after discovery closed) produced a table identifying by year certain identifying information, including average monthly payment and number of accounts paid off, for Explorers leased

---

[1] **Lewis Decl., Att. A:** "So there's no serial publication of this kind … in terms of the transaction prices at the retail level nor one that represents the … the range of values that would be … exhibited at that level."
[2] **Att. B:** "With regard to your request for information Ford has on class membership, Ford has records identifying the VINs of 2011-2015 Ford Explorer vehicles originally sold by Ford to Ford dealers in Florida.").
[3] Court *Daubert* Order, Docket Entry #215: "[]Plaintiff explains that Gaskin intends to testify regarding his conjoint analysis results for diminution in value as a percentage of the value of an Explorer. Plaintiff cites to voluminous pricing evidence provided by Ford … which it plans to present at trial, so that the jury can apply Gaskin's conjoint analysis…")
[4] Plaintiff Notice, Docket Entry #176.

by Ford Motor Credit in Florida.[5]

Plaintiff's counsel asked Weir to perform certain sorts of the information compiled. This request was made not because Weir was being asked to present any opinions (he is not) but because he's materially more adept with spreadsheets than plaintiff's counsel. (For the same reason – his personal technical limitations - plaintiff's counsel asked a colleague to place a screenshot into a *Daubert* opposition brief[6]).

First, Weir merged the class notice VIN spreadsheet with the Ford discovery VIN spreadsheet. More than 6,000 VIN numbers found in the class notice spreadsheet weren't reflected in the later-produced spreadsheet, which is presumably explained by Ford's counsel in a Feb. 18 email.[7] *Weir's merger of the spreadsheets involved no opinion.* Next, Weir looked up the model type for each of the 34,198 VIN numbers in Ford's discovery spreadsheet by a publicly available VIN guide that explains how to "uncode" VIN numbers. *Weir's application of the guide to the spreadsheet involved no opinion.*

In discovery, Ford Motor Credit asserted that "Cab East, LLC is a single purpose entity whose only business involves holding titles to leased vehicles for Ford Motor Credit Co."[8] Accordingly, Weir examined the Ford-produced spreadsheet VIN numbers to identify those linked to a Cab East, LLC address with the intention of sorting the leased vehicles from the sold vehicles.  Weir next compared Ford Motor Credit's table with the Ford discovery spreadsheet VIN numbers. He found that 2,082 leased vehicles identified by Ford Motor Credit were not associated with Cab East in the Ford-produced spreadsheet. *This comparison does not involve an opinion.*

Next, to be conservative, Weir totaled the amount generated to Ford for the sold vehicles and then reduced that sum by the average revenue generated by the model type of the "missing" leased vehicles. Weir then totaled what remained.  *This tally involves no opinion, and results in a total of $730,932,265.29 in revenue to Ford attributable to Explorers model years 2011-2015. As to the vehicles segregated as leased, Weir calculated by the total lease payments, based on the average monthly payment and average term provided by Ford*

---

[5] **Att. C.**
[6] Plaintiff Gaskin *Daubert* Br., Docket Entry #192, at 8.
[7] **Att. D**: "Information on older model year VINS may no longer be available."
[8] **Att. E.**

*Motor Credit. Once again, this tally involves no opinion, and results in a total of $132,341,606.42 attributable to lease payments.*

To be sure, the sorting was done meticulously. Weir's careful approach was disclosed to Ford through the *Daubert* briefing[9] along with an invitation to Ford to review the various spreadsheets Weir generated as part of these sorts (to which Ford didn't respond). Plaintiff intends on introducing this information at trial through Fed. R. Evid. 1006, which is tailor-made for this sort of circumstance. Under the rule, plaintiff "may use a summary, chart or calculation to prove the content of voluminous writings … that cannot be conveniently examined in court." Courts, in similar settings, have not hesitated in applying the rule to merged spreadsheets of the type discussed here.[10]

The Court should deny Ford's motion.

---

[9] **Att. O to Lewis 3/3/2016 Decl.**
[10] *Fed. Deposit Ins. Corp. v. Key Fin. Servs., Inc.,* 1999 WL 34866812, at *10 (D. Mass. Dec. 23, 1999), *aff'd,* 280 F.3d 12 (1st Cir. 2002)(finding that spreadsheets compiled from mortgage loan histories and used by plaintiff to calculate its purported damages were admissible under Rule 1006 where the underlying documents were made available to the defendant and were admissible under the business records exception to the hearsay rule); Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co., 902 F. Supp.2d 166, 172 (D. Mass. 2012)(admitting summary of data extracted from "far more detailed" operating statement); *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 130 (S.D.N.Y. 2000)(counsel-produced spreadsheets summarizing contemporaneously recorded information admissible); SEIU v. Bristol Manor Healthcare Center, Inc., 2016 WL 354873, *8-9 (D.D.C. Jan. 28, 2016)(spreadsheets summarizing claimed damages admissible "even if calculations are mistaken because admissible evidence may be unpersuasive and a defendant has the opportunity to rebut it.")(internal quote marks and citation omitted); *U.S. v. Keck*, 643 F.3d 789, 797 (10th Cir. 2011)("If the records custodian had created a compilation by copying data from several spreadsheets into a new document, then that compilation would be admissible as a summary under Rule 1006…"); *Elliott v. Kiesewetter*, 112 Fed. App'x 821, 823 (3rd Cir. 2004)(spreadsheets admissible where they contained "only information set forth in those underlying originals."); *City of New York v. Gordon*, 2015 WL 9646053, *10 n.13 (S.D.N.Y. Dec. 10, 2015)("The resulting spreadsheet is admissible as a summary … because the ASN files on which it is based are otherwise admissible … and because the Declaration of Andrew Wu …  sufficiently details the steps used to make that spreadsheet."); *U.S. v. White*, 737 F.3d 1121, 1136 (7th Cir. 2013)("[T]o the extent that the defendants argue that the chart did not contain other types of information … the defendants were free to cross-examine the spreadsheet's creator to bring out that information.").

Dated:  April 25, 2016                By: /s/ Jordan M. Lewis
                                      Jordan M. Lewis (FBN: 97997)
                                      Michael A. Hersh (FBN: 56019)
                                      John J. Uustal (FBN: 73547)
                                      **Kelley Uustal, PLC**
                                      700 S.E. 3rd Avenue, Suite 300
                                      Fort Lauderdale, Florida 33316
                                      Telephone:    (954) 522-6601
                                       Facsimile:    (954) 522-6608
                                      Email:        jml@kulaw.com
                                      Email:        mah@kulaw.com

                                      *Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by CM/ECF Notification this 25th day of April, 2016 to:

| | |
|---|---|
| J. Trumon Phillips, Esquire<br>Fredrick H.L. McClure<br>DLA Piper LLP<br>100 North Tampa Street, Suite 2200<br>Tampa, FL 33062-5809<br>trumon.phillips@dlapiper.com<br>fredrick.mcclure@dlapiper.com | Joel A. Dewey, Esquire<br>Jeffrey Yeatman, Esquire (pro hac vice)<br>DLA Piper LLP<br>The Marbury Building<br>6225 Smith Avenue<br>Baltimore, Maryland 21209-3600<br>joel.dewey@dlapiper.com<br>Jeffrey.yeatman@dlapiper.com |
| Janet Conigliaro, Esquire<br>Dykema<br>400 Renaissance Center<br>Detroit, Michigan 48243<br>jconigliaro@dykema.com | Paul V. Lankford, Esquire (pro hac vice)<br>Lankford Crawford Moreno & Ostertag, LLP<br>1850 Mt. Diablo Boulevard, Suite 600<br>Walnut Creek, CA 94596<br>plankford@lclaw.com |
| Fred J. Fresard, Esquire (pro hac vice)<br>Dykema<br>39577 Woodward Avenue<br>Suite 300<br>Bloomfield Hills, MI 48304<br>ffresard@dykema.com | Henry Salas<br>Cole, Scot & Kissane, P.A.<br>9150 S. Dadeland Blvd., 14th Floor<br>Miami, FL 33156<br>Henry.salas@csklegal.com<br>Hazel.colon@csklegal.com |

*Attorneys for Defendant*

                                      /s/ Jordan M. Lewis
                                      Jordan M. Lewis (FBN:  97997)

5