UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61344-CIV-DIMITROULEAS/Snow

ANGELA SANCHEZ-KNUTSON,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Defendant, Ford Motor Company's Motion to Strike Opinions and Analysis of Non-Disclosed Expert Colin Weir (ECF No. 216) which was referred to Lurana S. Snow, United States Magistrate Judge. A hearing was held before the undersigned on May 18, 2016. After hearing the argument of counsel, the Court ordered the Plaintiff to produce to Ford spreadsheets generated by Colin Weir, and make Mr. Weir available for deposition. The Plaintiff also was instructed to file a transcript of Weir's deposition with the Court, and the parties were each permitted to supplement their papers. Ford's motion is now ripe for consideration.

In this action, Plaintiff alleges that Ford has sold and leased Explorer models which it knew or should have known may permit exhaust and other gases, including carbon monoxide, to enter the passenger compartments of the vehicles, rendering them dangerous and defective.

One of the issues to be determined at trial will be the proper measure of class wide damages, if any. The instant motion concerns the disclosure of Colin Weir, whom the Plaintiff identifies in her March 22, 2016, Rule 26(a)(1) Second Supplemental Disclosures as a person with "information concerning the merging and organizing of the various Ford-produced spreadsheets used to calculate damages." (ECF No. 217-1, p.10) According to Ford, Weir is a new expert witness

masquerading as a fact witness, and his disclosure four months after the deadline to do so, and two months after the close of discovery, is improper.

On February 15, 2016, Ford filed <u>Daubert</u> motions seeking to exclude three witnesses disclosed by the Plaintiff as experts in this case.  One of the witnesses, Steve Gaskin, was offered as an expert in the fields of market research and marketing science models, for the purpose of testifying about the results of a conjoint analysis survey he developed and analyzed, which purports to demonstrate that the value of Explorers was diminished by 46.7% when survey-takers were asked to consider a vehicle for which accelerating with maximum air conditioning may lead to the smell of exhaust gases in the cabin of the vehicle.  Among other things, Ford challenged Gaskin's ability to ascertain the average purchase price of the class vehicles, a figure critical to the ultimate calculation of class wide damages. In response to Ford's argument, Plaintiff explained that she intended to use voluminous pricing evidence provided by Ford in the course of discovery, which would enable the jury to apply Gaskin's conjoint analysis to the class.  The Court declined to exclude Gaskin as an expert witness.  (ECF No. 215)

Ford now seeks the exclusion of Colin Weir, the witness Plaintiff relied upon to sort revenue data from Ford dealers produced by Ford in discovery, which Plaintiff used as a proxy for the purchase price paid by consumers.  According to Ford, if Weir is a non-expert as Plaintiff suggests, he should not have been given access to Ford's protected revenue data.[1]  In any case, Ford asserts that the manipulation and analysis of Ford's data is the type of analysis that must be done by an expert.  In support of this assertion, Ford avers that the very conclusion that revenue generated from one transaction can serve as an appropriate proxy for the average purchase price of vehicles in an entirely separate transaction is not a statement of fact, but one of opinion that must be founded

---

[1] In response to this concern, Plaintiff's counsel assured Ford that Weir had signed the parties' confidentiality agreement and agreed to be bound by its terms.

on expertise. In further support of its position, Ford points to the fact that Weir is an economic expert who routinely testifies on damages calculations in class action litigation.

Plaintiff asserts that sorting was necessary to derive the appropriate sales price for sold vehicles and lease price for leased vehicles. Plaintiff's counsel asked Weir to perform the sort only because he is more adept with spreadsheets than Plaintiff's counsel, and not so as to present any opinion on the subject. Plaintiff explains that in the auto industry, there is no available listing or record of the actual price paid by consumers for new cars, and Ford has no record of the consumers who purchased its new cars. Rather, Ford records the VIN numbers of the cars sold to its authorized dealers. For this reason, it always has been Plaintiff's intention to apply the diminution in value as a percentage against Ford's sales figures to derive total class damages, as the Court recognized in its order denying Ford's motion to exclude the expert testimony of Steven Gaskin.

Ford produced the following during and after the close of discovery which Plaintiff intends to use to calculate a proxy purchase price for Explorer vehicles: 1) a 38,946 line spreadsheet representing the VIN numbers of 2011-2015 Explorers that Ford sold to authorized Florida Ford dealers;[2] 2) a 34,198 line spreadsheet that, by VIN number, included various financial information concerning Ford's sale to the dealers, including the net revenue to Ford for each vehicle sold; and 3) a table identifying by year certain identifying information, including average monthly payment and number of accounts paid off, for Explorers which were leased in Florida. Weir first merged the two spreadsheets. According to the Plaintiff, this involved no opinion. Next Weir looked up the model type for each of the VIN numbers in the second spreadsheet using a publicly available guide which explains how to decode VIN numbers. According to the Plaintiff, this too involved no opinion.

---

[2] This information was used for distributing class notice. Plaintiff linked 45,827 names and addresses to the VIN numbers on the list.

Next, Weir examined the Ford produced spreadsheet VIN numbers to identify those linked to a Cab East, LLC[3] address in order to sort the leased vehicles from those which were sold to customers. He found 2,082 leased vehicles identified by Ford Motor Credit which were not associated with Cab East, LLC in the Ford Produced spreadsheet. This too, according to the Plaintiff, involved no opinion. Weir then totaled the amount generated to Ford for the sold vehicles and then reduced that sum by the average revenue generated by the model type of the "missing" leased vehicles. He then totaled what remained to come up with a figure for revenue to Ford attributable to Explorer model years 2011-2015. As for the leased vehicles, Weir calculated the total lease payments, based upon the average monthly payment and average term provided by Ford Motor Credit. Again, Plaintiff asserts that Weir's calculation involves no opinion.

Plaintiff contends that Weir's approach was disclosed to Ford through Daubert briefing, and Ford was invited to review the spreadsheets Weir generated as part of the sorts he conducted. Ford did not respond to the Plaintiff's offer. Plaintiff does not intend to offer the evidence at issue pursuant to Fed.R.Evid. 702, rather, she intends to offer it through Fed.R.Evid. 1006, which permits party to "use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court."[4]

The issue is whether Colin Weir's anticipated testimony will be that of a genuine lay witness, or whether he is, as Ford contends, an expert in lay witness clothing who needed to be disclosed as such in accordance with Rule 26.

Fed.R.Evid. 701 which governs opinion testimony by lay witnesses states:

---

[3] Cab East, LLC is an entity whose only purpose is to hold title to leased vehicles for Ford Motor Credit Co.

[4] The undersigned takes no position as to whether summaries resulting from Weir's merging of Ford's data are admissible under Fed.R.Evid. 1006. That determination is more properly made if and when they are offered into evidence at trial.

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Subsection (c) was added to the Rule in 2000 specifically to address the issue raised in the instant motion.  The Advisory Committee Notes on the 2000 Amendments explain that the rule was "amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. . . . [T]he amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26. . .by simply calling an expert witness in the guise of a layperson." "[A] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Id. citing Asplundh Mfg. Div. v. Benton Harbor Eng'g., 57 F.3d 1190 (3d Cir. 1995).  It is, of course, "possible for the same witness to provide both lay and expert testimony in a single case," however, "any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil . . .Rules." Id.   Lay testimony "results from a process of reasoning familiar in everyday life," whereas expert testimony "results from a process of reasoning that can be mastered only by specialists in the field." Id. citing State v. Brown, 836 S.W. 2d 530, 549 (1992).

After the hearing on the instant motion, Ford was afforded the opportunity to depose Weir concerning exactly how he conducted the sorting of the information contained in Ford's sales records.  The transcript of his testimony was filed for the Court's consideration under seal on June 15, 2016.  (ECF No. 262)  During Weir's cross examination Plaintiff's counsel provided a preview

of how he expects Weir to testify at trial.  The Court has carefully reviewed the entire transcript as well as the parties' supplemental briefs, and is satisfied that Weir's role in this instance, which merely included sorting and summarizing information provided by Ford for use by the Plaintiff's at trial, does not constitute the type of testimony which would require the specialized knowledge of an expert.  In fact, Weir offers no opinion whatsoever as to whether the Plaintiff's chosen method of generating a figure for Ford's revenue is the best or even an appropriate means of doing so.  Being fully advised, it is hereby

      ORDERED AND ADJUDGED that Ford Motor Company's Motion to Strike Opinions and Analysis of Non-Disclosed Expert Colin Weir (ECF No. 216) is DENIED.

      DONE AND ORDERED at Fort Lauderdale, Florida, this 11th day of July, 2016.

                                                LURANA S. SNOW
                                                UNITED STATES MAGISTRATE JUDGE

Copies to:
All Counsel of Record and Pro Se Parties