IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Angela Sanchez-Knutson, individually
and on behalf of all those similarly
situated,                                                         CASE NO.  14-cv-61344 WPD

       Plaintiff,

v.

Ford Motor Company,

       Defendant.
_____

**PLAINTIFF'S UNOPPOSED MOTION FOR CLASS REPRESENTATIVE SERVICE AWARDS
AND CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND
INCORPORATED SUPPORTING MEMORANDUM**

**MOTION**

Plaintiff Angela Sanchez-Knutson moves this Court for the following:

**1)**      Attorneys' fees and costs in the amount of **$5 million** to be disbursed among
the nine law firms (not all of the firms filed declarations in support of this fee
petition) involved in the prosecution of this lawsuit and seven other related
lawsuits filed around the country (and several other cases that were not
commenced).  If approved, the settlement of this action will resolve all eight
of the cases filed against defendant Ford Motor Company arising out of
concerns that involve alleged exhaust leakage into the passenger cabins of
Ford Explorers model years 2011-2015.

**2)**      Class representative awards in the amount of **$60,000** to be disbursed in
varying amounts to the 10 named plaintiffs involved in the eight related class
actions filed around the country.

The proposed attorneys' fees and class representative awards were negotiated

separately from the class relief. Plaintiff has agreed to not request more than the amounts

requested above, and Ford has agreed to not contest these requested amounts.[1]

_____

**[1] Lewis Decl., Att. A, ¶¶ II g-h.**

## INCORPORATED SUPPORTING MEMORANDUM

### I.   INTRODUCTION

In general, the "American Rule" requires parties to bear their own costs in litigation.[2] There is an exception to this rule in cases where counsel has obtained a substantial monetary or non-monetary benefit for a class. This exception is known as the "common fund exception [and] 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.' "[3] Thus, "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."[4]

This motion seeks approval for $5 million in fees and costs for the lawyers involved in the Ford Explorer litigation. To be sure, most of the action occurred, and most of the fees were generated, in this litigation. But a total of eight cases around the country were commenced by the undersigned after clients in those states surfaced with claims that paralleled what was brought here – that their Ford Explorers, model years 2011-2015, tended to smell of exhaust, especially when the vehicle accelerated hard while the interior air conditioning was set at "recirculate." Those cases are all either stayed or dismissed

---

[2] *Dowdell v. Apopka*, 698 F.2d 1181, 1189 n.12 (11th Cir. 1983)("Numerous policies have been considered to underlie the American rule. Among them are the following: (1) it is a prophylactic against abuses in the form of excessive litigation or unreasonable fees being generated by a client and his attorney [;] 2) it prevents those with just but monetarily small claims from being hesitant to litigate them for fear of being saddled with their opponent's counsel fees; (3) it avoids the substantial burdens for judicial administration which would result from litigation fees.")(citations omitted).

[3] *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

[4] *Id.* (citing Fed. R. Civ. P. 23(e)).

pending these settlement proceedings. It is appropriate for undersigned's co-counsel in those cases to submit their fee request in this action, as well, and they have done so.[5]

In addition, with this motion, the undersigned seek class representative awards, in differing amounts but totaling $60,000, for the 10 named plaintiffs in the eight class cases that are tied to this litigation.

The parties' settlement agreement, as amended contemplates both recoveries. The settlement agreement provides that plaintiffs will seek no more than $5 million in fees and costs, and that Ford will not object to a request that doesn't exceed that cap. Similarly, the agreement provides that counsel will seek no more than $60,000 total in class representative awards, and Ford will not object to a request within that amount.[6]

## II.   BACKGROUND

### A.   The litigation

The Ford Explorer exhaust fume litigation (as this line of cases came to be known) formally commenced on June 9, 2014 with the filing of a four-count class action complaint in this Court. In her Complaint, Angela Sanchez-Knutson contended that her 2013 Ford Explorer tended to leak exhaust into the passenger cab when the car was accelerated hard *and* while the air conditioning was on recirculate. Sanchez-Knutson brought her action as a class action on behalf of all Florida 2011-2013 Explorer owners and lessees. That class eventually expanded to include Explorers from model years 2014-15.

The Florida litigation escalated quickly. Among other things, this Court denied

---

[5] The undersigned's co-counsel's time as set forth in their respective declarations is included within this request for fees and costs in the total amount of $5,000,000.00.
**[6] Lewis Decl., Att. A.**

Ford's motion to dismiss;[7] granted in part Ford's motion to dismiss Sanchez-Knutson's Second Amended Complaint;[8] granted in part Sanchez-Knutson's motion for class certification;[9] denied in part Ford's *Daubert* motions;[10] and further resolved about a dozen motions in *limine* and other pretrial motions.[11]  Along the way, the parties engaged in two formal mediations and several informal ones. The final informal negotiation resulted in a settlement term sheet on August 5, 2016; less than 72 hours before trial was set to commence. That settlement was preliminarily approved on November 21, 2016[12] and amended once.[13]  As part of the preliminary approval, a total of 1,210,675 Court-approved class notices were mailed in March 2017. As of May 1, 2017, no one has objected and 48 class members have sent a purported request to opt out to the settlement administrator.[14]

During the pendency of this litigation, the undersigned counsel, along with law firms in other states, commenced parallel class litigation in Ohio,[15] Louisiana,[16] California,[17] New York,[18] North Carolina,[19] Texas[20] and New Jersey.[21] None of these additional cases made much headway. All but one of the New York[22] and New Jersey[23] claims were dismissed at

---

[7] *Sanchez-Knutson v. Ford Motor Co.,* 52 F. Supp.3d 1223 (S.D. Fla. 2014).
[8] *Sanchez-Knutson v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 181103 (S.D. Fla. July 22, 2015).
[9] *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015).
[10] *Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp.3d 988 (S.D. Fla. 2016).
[11] Docket Entry #399.
[12] Docket Entry #434.
[13] Docket Entry #437.
[14] **Lewis Decl.**
[15] No. 16-CV-00797 (S.D. Ohio).
[16] 15-CV-02483 (E.D. La.).
[17] 15-CV-000124 (S.D. Cal.).
[18] 14-CIV-06135 (E.D.N.Y.).
[19] 16-CV-00239 (W.D.N.C.).
[20] 15-CV-00011 (S.D. Tex.).
[21] 15-CV-05188-MAS-LHG (D.N.J.).
[22] *Dixon v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 146263 (E.D.N.Y. Sept. 30, 2015).
[23] Feb. 25, 2016 Order (Docket Entry #30).

the early motion stage; the Louisiana class claims were struck[24] after plaintiffs there had defeated a motion to dismiss;[25] the Texas plaintiff defeated a motion to dismiss;[26] the California plaintiff survived two rounds of dismissal motions with three claims intact.[27]

## B.    The proposed settlement

The proposed settlement has four distinct elements.

### 1.    *Information campaign*

The *first* element of the settlement is the dissemination of information to Explorer owners and lessees about the potential problem.[28] This took the form of a mailed notice to 1,210,675 persons beginning March 2017.[29] Among other things, the notice directs recipients to a lawsuit-related website[30] that links to a new 2016 Technical Service Bulletin[31] issued by Ford that details how it believes the exhaust problem can be fixed.  The 2016 TSB has two parts – the first mostly restates (with more detail) the fix outlined in its 2014 TSB. The second describes a much more significant (and new) repair. Only those Explorers (1) with a normally aspirated 3.5-liter Twin Independent Variable Camshaft Timing and (2) whose emission problem is not solved by the first half of the 2016 TSB repair are eligible for the second half of the 2016 TSB repair. According to Ford, 699,468 of the 840,608 Explorers owned or leased by class members (or 83.2%) have the engine type eligible for the second half of the 2016 TSB.[32]

---

[24] *Cassidy v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 73314 (E.D. La. May 25, 2016).
[25] *Cassidy v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 20324 (E.D. La. Feb. 19, 2016).
[26] May 13, 2016 Order (Docket Entry #59).
[27] July 25, 2016 Order (Docket Entry #43).
[28] **Lewis Decl., Att. A, § IIa (p. 11).**
[29] **Lewis Decl.**
[30] https://eclaim.kccllc.net/caclaimforms/fsk/home.aspx.
[31] **Lewis Decl., Att. B.**
[32] **Lewis Decl.**

Those class members whose cars are within warranty and who are experiencing exhaust odor will, of course, be able to immediately take advantage of the new fix described in the 2016 TSB at no cost.

### 2.    *Beyond warranty but complained of exhaust within warranty*

*Second*, those class members whose warranties have expired but who can demonstrate that they attempted to fix a diagnosed exhaust smell at an authorized Ford dealer during the warranty period will be entitled to a subsidized post-warranty repair if they are still experiencing exhaust odor. The maximum permitted reimbursement for this repair is $175 for the first half of the TSB and $500 for the second half of the TSB.[33] They will have the later of 4 years/48,000 miles after their vehicle was placed into service or 60 days beyond the effective date of the settlement to present their vehicles to an authorized Ford dealer for repair.  The settlement provides reimbursement for up to two such repairs.

### 3.    *Beyond warranty and did not complain of exhaust within warranty*

*Third,* those class members who did <u>not</u> complain of their Explorers' exhaust smell within warranty but who are now experiencing exhaust odor, will be entitled to a subsidized post-warranty repair with a reimbursement capped at $175 for each of the two repairs described in the 2016 TSB.[34] They will have the later of 60 days after the effective date of settlement or 60 days after the expiration of the warranty period to present their vehicles to an authorized Ford dealer for repair. The settlement provides reimbursement for up to two such repairs.

### 4.    *Appeals procedure for continued inability to repair*

---

[33] **Lewis Decl., Att. A, § IIb, at p. 12.**
[34] *Id.*

*Fourth*, class members who received an exhaust odor repair under warranty, and are still experiencing exhaust odor after the repairs described in the 2016 TSB are performed will have the right to a no-cost (to them) appellate procedure. They will be eligible to present their claim before a mediator/arbitrator selected by the Better Business Bureau. Participants will be entitled to seek all of their unreimbursed TSB repair costs at the BBB or, potentially, a buyback of their vehicle. In exchange for making this process mandatory from which neither party has the right of appeal, Ford has waived certain statute of limitations defenses and its defense that the exhaust odor is allegedly caused by a design defect which is not covered by its warranty.[35]

### III.   CLASS COUNSEL SHOULD BE AWARDED REASONABLE COSTS AND FEES

## A.   Three foundational principles

There are three foundational principles (apart from the legal standards discussed below) against which this fee petition should be viewed.

*First* is this: The fact that the fees are being paid separately from the class recovery doesn't change the legal analysis. So explained Judge Gold in *David v. American Suzuki Motor Corp.*:[36]

> While I recognize that the fee award requested by Class Counsel will be paid separately by Defendants and is not drawn from a "common fund" in the traditional sense, there is authority directing "district courts to exercise their equitable jurisdiction to review counsel-fee arrangements negotiated in connection with class-action settlements — even where the counsel fees are not taken from a common fund but are instead paid separately by a class-action defendant." *Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1, 4 (1st Cir. 1999*); see also* Fed. R. Civ. P. 23(h). Here, unlike other cases where the common fund approach has been rejected because the non-monetary settlement's value was inflated, difficult to calculate, or illusory because of the nature of the benefits, *see e.g., Strong v. BellSouth*

---

[35] *Id.*, IId, at 14.
[36] 2010 U.S. Dist. LEXIS 146073 (S.D. Fla. April 15, 2010).

> *Telecommunications, Inc.*, 137 F.3d 844, 853 (5th Cir. 1998), the value of
> the proposed settlement's benefits is ascertainable and has been
> estimated at approximately $5 million.[37]

*Second*, for purposes of analyzing the fee petition, the Court should consider the opportunity created by the settlement, and not the number of claims actually filed, which, in this case, will not be known for several years. Explained Judge Bloom in *Wilson v. Everbank*:[38]

> This is so because "[a] settlement's fairness is judged by the opportunity
> created for the class members, not by how many submit claims ... What
> matters is the settlement's value to each class member—it is ultimately up
> to class members whether to participate or not."[39]

*Third*, the final approval of this settlement – should the Court grant the parties' motion – will not conclude plaintiffs' counsel's labors on behalf of the class. Counsel expect to be involved in assisting class members with their claims, helping them with claim denials, and further shepherding them through the BBB dispute resolution process. None of that work is included in this fee petition. Explained Judge Gold in *Allapattah Servs. v. Exxon Corp.*:[40]

> Even after the settlement approval, Class Counsel remains responsible to
> pursue each claim to judgment. This will require Class Counsel (as later
> addressed) to place a large staff of attorneys, paralegals and other
> professionals to assist claimants in prosecuting their claims. They will stay
> in that role for the duration of the Claims Administration Process. No other
> attorneys' fees will be charged by Class Counsel for these services. By
> fully aligning Class Counsel's interest in attorneys' fees with the maximum
> recovery for each Class member, the Class, as a whole receives a benefit,
> as compared to leaving each member on his or her own after the

---

[37] *Id.* at \*26-27. *Accord, Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014)("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class.").

[38] 2016 U.S. Dist. LEXIS 15751 (S.D. Fla. Feb. 3, 2016).

[39] *Id.* at \*33-34 (citing *Hall v. Bank of America, N.A.,* 2014 U.S. Dist. LEXIS 177155, \*26-27 (S.D. Fla. Dec. 17, 2014)).

[40] 454 F. Supp.2d 1185 (S.D. Fla. 2006).

> settlement. There is a price to the Class, however, for this full alignment of interest. In my view, the Class, and each Class Member, must be prepared to compensate Class Counsel at the full market rate for such past and present extraordinary services.[41]

All three of these principles support the fee petition.

B.     **Lodestar**

One look at the accumulated lodestar demonstrates the reasonableness of plaintiff's $5 million fee petition. Once costs are deducted, counsel's multiplier is 1.0, and that doesn't take into account the work they will accept in helping claimants through the claims process through their BBB appeal.

Plaintiff's principal claim – the one that, as of the date of settlement, had survived all of Ford's dispositive motions and motions in *limine* – was brought under the Florida Deceptive and Unfair Trade Practices Act claim,[42] which contains a fee shifting provision,[43] as do virtually all other state consumer protection statutes, and it is under those statutes that this case was conditionally certified for settlement purposes.[44] (Though these are state consumer protection statutes, it is appropriate for this Court to use federal law in assessing lodestar.[45]) And because all of the legal claims, those dismissed and those remaining, involved the same set of constituent facts, it is appropriate to consider the entire lodestar,

---

[41] *Id.* at 1203-04.

[42] **Second Amended Complaint, Docket Entry #85, at ¶¶ 84-97.**

[43] Fla. Stat. § 501.2015.

[44] Docket Entry #434.

[45] *Maale v. Kirchgessner*, 2011 U.S. Dist. LEXIS 18506, *63 (S.D. Fla. Feb. 18, 2011)("The Court finds that federal courts use federal law to determine whether an hourly rate for a FDUPTA claim is reasonable. [] Accordingly, the Court will look to federal law, rather than to Florida law, to resolve the issue of determining a reasonable fee when the attorney has different rates for different clients.")(citations omitted).

and not just those entries directed exclusively at the consumer fraud statute.[46]  *Camden* validates the lodestar approach in this context.[47]

The initial calculation of a reasonable attorneys' fee is determined by multiplying the number of hours reasonable expended on the litigation multiplied by a reasonable hourly rate.[48] The lodestar may then be adjusted – either up or down – based on the results obtained.[49]

Here, as of April 27, 2017, the total costs incurred by plaintiffs' counsel is $744,396.36. That reduces the amount available to pay fees to $4,255,643.64 ($5 million minus $744,396.36).  Again as of April 27, 2017, the total lodestar (time billed multiplied by hourly rate) is $4,090,861.75, which is further detailed in the supporting declarations filed with this petition. That total number leaves the multiplier (calculated by dividing the amount available to pay fees by the total lodestar) as 1.0402. (And, of course, both the costs incurred and lodestar will increase before this case finally concludes). This is summarized by the table below:

| Firm | Lodestar (by case) | Costs |
|---|---|---|
| Kelley Uustal, LLC | *Bruzina* - $375<br>*Cassidy* - $39,922.50<br>*Cunningham* - $20,082.50 | $707,909.00 |

---

[46] *Democratic Republic of the Congo v. Air Capital Group*, 2016 U.S. Dist. LEXIS 137048, *12-13 (S.D. Fla. Sept. 14, 2016)("For such a circumstance there is ample authority under Florida law that supports DRC's claim for recovery of FDUTPA fees where similar, intertwined claims were also presented to the jury.").

[47] *Camden,* 946 F.2d at 774 ("The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards.").

[48] *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

[49] *American Civil Liberties Union v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999)("A reasonable attorney fees award [] is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.  This lodestar may then be adjusted for the results obtained.")(internal quote marks and citations omitted).

|  | | |
|---|---|---|
|  | *Dixon* - $176,740.50<br>*Regenia Ford* - $ 7,660<br>*Sanchez-Knutson* -<br>$2,918,778.25<br>*Reid* - $750[50]<br>*Salinas* - $49,412.50<br>*Schondel* - $64,112.50 | |
| Jordan Lewis, P.A. | *Cassidy* - $1,425<br>*Cunningham* - $300<br>*Dixon* - $712.50<br>*Sanchez-Knutson* - $225,225<br>*Bruzina* - $375<br>*Regenia Ford* - $4,575<br>*Reid* - $1,875<br>*Schondel* - $11,512.50<br>*Ruzanski*[51] - $75<br>*Salinas* - $2,550 | |
| Frank Castillo | *Salinas* - $6770 | $400 |
| Cohen Placitella & Roth | *Schondel* - $293,382.50 | $14,964.60 |
| Gomez Trial Attorneys | *Cunningham* - $90,600 | $5,205.32 |
| Beasley Allen | *Salinas*, *Reid* and *Sanchez-Knutson* - $136,483 | $15,227.54 |
| Martin & Jones | *Regenia Ford* - $37,542.50 | $689.90 |
| **Totals** | **$4,090,861.75** | **$744,396.36** |

The various firms' submissions are supported by declarations from representatives of each of the constituent law firms, along with the **David Buckner Declaration**. This lodestar request, with an effective "multiplier" of 1.0, is easily within what's considered reasonable in this jurisdiction.[52]

---

[50] The *Reid* case was never filed.

[51] The *Ruzanski* case was never filed.

[52] *See, e.g., Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers " 'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average"); *Ingram v. The Coca-Cola Co*, 200 F.R.D.

### C.    Common fund

#### 1.    As a cross check, this fee request is well within <u>Camden</u>

As a cross-check, it is appropriate to consider the percentage of the fund rule

described in the 11ᵗʰ Circuit decision of *Camden I Condominium Ass'n v. Dunkle.*[53] In

*Camden*, the 11ᵗʰ Circuit held that, in in determining percentage of the fee awards in class

cases, the "bench mark" percentage is 25%, "which may be adjusted up or down based on

the circumstances of each case."[54] In considering adjustments, *Camden* held that district

courts should evaluate the twelve "Johnson factors," which refers to *Johnson v. Georgia*

*Highway Expr., Inc.*[55]  The 12 factors are: (1) the time and labor required; (2) the novelty

and difficulty of the questions involved; (3) the skill requisite to perform the legal service

properly; (4) the preclusion of other employment by the attorney due to acceptance of the

case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations

imposed by the client or the circumstances; (8) the amount involved and the results

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

"undesirability" of the case; (11) the nature and the length of the professional relationship

with the client, and (12) awards in similar cases.[56]  "The Court may also consider its own

knowledge and experience concerning reasonable and proper fees and may form an

independent judgment either with or without the aid of witnesses as to value."[57] *Camden*

---

685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4);
*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of
approximately 3.1 in a national class action securities case is not unusual or
unreasonable.").
[53] 946 F.2d 768 (11ᵗʰ Cir. 1991).
[54] *Id.* at 775.
[55] 488 F.2d 714 (5th Cir. 1974).
[56] *Camden I*, 946 F.2d at 772 n.3.
[57] *Wachovia Bank v. Tien*, 2015 U.S. Dist. LEXIS 178364, *10 (S.D. Fla. April 7,

applies in traditional common fund and claims-made settlements.[58]

Under *Camden*, it is appropriate to consider the <u>value of the non-monetary relief</u> as part of the common fund from which the attorney fee percentage is applied:

> To determine whether the settlement's allocation of benefits was fair, the district court concluded that the value of the nonmonetary relief and *cy pres* award were part of the settlement pie. Neither conclusion rests on an incorrect or unreasonable application of our precedents.[59]

### 2.    *Plaintiff's $5 million fee request is a fraction of the "value" of the settlement*

This settlement is a mix of monetary and non-monetary benefits and, accordingly, a precise to-the-penny calculation of 100% of the common fund is impossible. But no matter how you slice it, the $5 million fee request is a fraction of the value of the settlement and is easily within the 25% benchmark.

Consider, for example, the information campaign created by 1.2 million notices sent to class members and the accompanying explanatory website. This notice will be the first time that, in all probability, hundreds of thousands of class members will learn about the exhaust issue, which until recently attracted virtually no media attention, as a Ford expert

---

2015)(internal quote marks and citations omitted).

[58] *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 n.2 (11th Cir. 2015)("While no published opinion of ours extends *Camden I* [*Condo. Ass'n . Dunkle's*] percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 [William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:7. (5th ed. 2011)].") *Accord, Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 285 (6th Cir. 2016)("an option to file a claim creates a prospective value, even if the option is never exercised."); *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1295 (11th Cir. 1999)("Contrary to defendants' assertion, no case has held that a district court must consider only the actual payout in determining attorneys' fees.").

[59] *Poertner*, 618 Fed. Appx. at 628.

testified.[60] In *In re Volkswagen & Audi Warranty Extension Litig.,*[61] - a comparable class settlement involving subsidized car repairs – the district court assigned the value of the settlement's information campaign at $18,719,788.[62]

Ford estimates that as many as 251,721 class members will be within warranty on the date of the fairness hearing.[63] Class members who have experienced the exhaust smell and who are within warranty will now have information that explains their experience. They will be entitled, at no cost to them, to take advantage of the 2016 TSB repair procedures, which, on average, costs Ford $609.37 for the first phase and $715.63 for the second.[64]

Now consider those class members who (a) are outside their warranty and (b) did not complain of the exhaust smell within warranty, again using highly conservative assumptions: Ford sent out 1,210,675 class notices. That number exceeds the number of cars at issue, which is 840,608, because some of the vehicles turned over during the class period. For purposes of this discussion, plaintiff will employ the smaller of the two numbers, 840,608. According to Ford, as many as 251,721 of these vehicles will be inside its 3-year/36,000-mile warranty.[65] That leaves at least 588,887 class members, each of whom will be entitled to, at least, a single $175 TSB subsidy should they obtain repairs for an exhaust smell inside their Explorer.

Finally, Ford's agreement to waive certain procedural defenses during BBB

---

[60] **Lewis Decl., Att. C, Hoffer Dep., p. 80, l. 20-21 ("It was a story that clearly was not of interest to the media.").**
[61] 89 F. Supp3d 155 (D. Mass. 2015).
[62] *Id.* at 170.
[63] **Lewis Decl.**
[64] **Lewis Decl.**
[65] **Lewis Decl.**

proceedings confers non-monetary value, too. Plaintiff is aware of a single class member who litigated the exhaust smell issue with Ford with the BBB. Ford prevailed in the proceeding based on one of the defenses it has agreed to waive as part of this settlement.[66]

**3.    *Application of the Johnson factors supports plaintiff's requested fee***

Application of the 12 *Johnson* considerations further support's plaintiff's petition.

The first consideration is the time and labor required.  As the lodestar discussion above explains, the combined attorney lodestar is greater than $4 million, and that number will increase through the claims process. Combined with more than $700,000 in expenses, plaintiff's counsel can expect, at most, a multiplier of their lodestar at 1.0. And this Court well knows that the time incurred was spent in brass-knuckled litigation. In this Court alone, plaintiff defended two motions to dismiss and a summary judgment motion, prevailed on class certification, persuaded the 11th Circuit to not consider Ford's request for interlocutory review, brought and defended more than a dozen motions in *limine*, and litigated at least a half dozen discovery motions, some of which ultimately proved decisive. None of that includes the two dozen depositions taken and defended and the more than 100,000 pages of documents reviewed, nor the motion practice and discovery in the other related cases.

The second *Johnson* consideration is the novelty and difficulty of the questions. This was no cookie-cutter lawsuit; plaintiff confronted difficult esoteric legal issues on virtually every motion. Perhaps the best testimony to the difficulty of the issues presented is found in the results of the Schiesser plaintiff, who attempted to intervene in this action at the preliminary approval stage. On April 6, 2017, Schiesser's complaint was dismissed a second

---

[66] **Lewis Decl.**

time, with prejudice,[67] a result that plaintiff risked here and in the companion Ford cases on virtually every motion.

The third element is the skill required to perform the legal services. Plaintiff's counsel did not litigate the perfect case. But they did well enough to get, literally, on the edge of trial, besting a large and highly regarded team of Ford lawyers in doing so. "In assessing the quality of the representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."[68]

The fourth element is the preclusion of other employment due to taking on the Ford case.  Plaintiff's counsel combined recorded over 7,000 hours in time in the Ford case, almost all of which was generated in less than three years. This is time spent on Ford at the expense of other cases, added to more than $700,000 spent in prosecuting this action.

The fifth consideration is the customary fee. A one-third contingency is customary.[69] Plaintiff's requested fee is well within that.

The sixth consideration is whether the fee was fixed or contingent. It was, of course, contingent, and plaintiff risked losing a considerable investment of time and capital if they had lost this action. That, too, favors their fee request.

The seventh consideration is the time limitation imposed by the client or the circumstances. Here, there were only 26 months between the commencement of this action and the start of trial – less time than most car accident cases take. This compressed schedule put a heavy burden on plaintiff's counsel, a factor that also supports the fee request.

---

[67] *Schiesser v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 53180 (N.D. Ill. April 6, 2017).
[68] *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1334 (S.D. Fla. 2001).
[69] *Alapattah*, 454 F. Supp.2d at 1209.

The eighth element is the result obtained. . At least as important (to counsel) as the common fund is the principle animating this resolution. It was plaintiff's counsel's intention to arrive at a settlement that provided incentive to class members to fix their cars. This settlement accomplishes that.

The ninth consideration is the experience and ability of the undersigned attorneys. Again, counsel do not suppose that they litigated a perfect case. But they do suppose that they handled every aspect of this case with integrity, energy and care; this factor, too, supports the fee request.

The 10th consideration is the undesirability of the case. That is perhaps best demonstrated by the lack of copycat litigation. In the 26 months between case commencement and settlement, only one copycat lawsuit was filed, and that one was dismissed.[70] If the legal market means anything, the market itself didn't like this lawsuit.

Plaintiff had no professional or personal relationship with the undersigned counsel before this litigation commenced, which is the 11th *Johnson* factor. It too supports plaintiff's fee request.

Awards in similar cases, the 12th consideration, also support this fee request.[71] In a similar automotive class action, this Court awarded the $2 million fees and costs requested, where the plaintiffs' counsel's request (1) amounted to 11.1% of the estimated settlement value, and (2) included a multiplier of between 2 and 3 of the lodestar.[72] Here, the total fees and costs requested amount to an even lesser percentage of any reasonable valuation of the

---

[70] *Schiesser v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 53180 (N.D. Ill. April 6, 2017).
[71] *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999).
[72] *Rosen v. J.M. Auto Inc.*, Case No. 07-61234-CIV (S.D. Fla.), D.E. # 251, 266 **(Lewis Decl., Att. D**.)

fund under controlling law, and there is virtually no multiplier of the lodestar.

### IV.    CLASS REPRESENTATIVES SHOULD BE AWARDED REASONABLE SERVICE AWARDS

Plaintiffs also seek a total of $60,000 in class representative awards, to be divided among 10 named plaintiffs from the eight Ford cases filed around the country. Like the attorneys' fees discussed above, the class representative award (a) was negotiated separately and after the class settlement was negotiated; and (b) the $60,000 that Ford agreed to pay (assuming this Court's approval) doesn't come from the class recovery.

Class service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[73] Indeed, "there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action."[74] One legal treatise summarized the practice as follows:

> Class members who serve as named plaintiffs, or class representatives, in class actions often have their service acknowledged by a court-approved "incentive award." … [C]ourts regularly approve such awards, reasoning that class representatives take on risks and perform services that benefit the class, although they aim to keep the award commensurate to the work actually performed.[75]

The factors relevant to the amount of service award include: (1) the representative's actions to protect the class's interests; (2) the degree to which the class benefitted from

---

[73] *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1218 (S.D. Fla. 2006).
[74] *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, *6 (S.D. Fla. April 15, 2010). *See, e.g., Ingram v. The Coca Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001)(awarding $300,000 apiece in service awards to class representatives, in lieu of compensation from class recovery, given "the magnitude of the relief the Class Representatives obtained on behalf of the class."); *Spicer v. Chicago Board Options Exchange, Inc.,* 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993)(collecting cases approving service awards ranging from $5,000 to $100,000; awarding $10,000 to plaintiffs there).
[75] 4 NEWBERG ON CLASS ACTIONS § 11:38 (4th ed.).

those actions; and (3) the time and effort the representative expended in pursuing the litigation.[76]

The following table presents the proposed award for the total of 10 named plaintiffs in the eight class cases filed by the undersigned. The rationale for the allocation is found in the attached **Lewis Declaration**.

| Case Name | Court File No. | Plaintiffs | Proposed Award |
|---|---|---|---|
| *Sanchez-Knutson v. Ford Motor Co.* | 14-cv-61344-WPD (S.D. Fla.) | Angela Sanchez-Knutson | **$26,500** |
| *Cassidy v. Ford Motor Co.* | 12-15-cv-02483 (E.D. La.) | James T. and Faith H. Cassidy | **$7,500 (total)** |
| *Dixon v. Ford Motor Co.* | 14-CV-06135 (E.D.N.Y) | Angela Dixon | **$7,500** |
| *Schondel v. Ford Motor Co.* | 15-CV-05188 (D.N.J.) | Stephen J. Schondel and Linda King-Schondel, and William and Corinna Cox | **$7,500 to Schondels; $1,000 to Coxes** |
| *Salinas v. Ford Motor Co.* | 15-cv-00011 (S.D. Tex.) | Lyliana Salinas | **$7,500** |
| *Cunningham v. Ford Motor Co.* | 15-CV-000124-L-JMA (S.D. Cal.) | Michael Cunningham and Eliboro Valenzuela | **$500 to Cunningham; $1,000 to Valenzuela** |
| *Bruzina v. Ford Motor Co.* | 16-cv-00797 (S.D. Ohio) | Julianne Bruzina | **$500** |
| *Ford v. Ford Motor Co.* | 16-CV-00239 MOC-DLH | Harvey Britton and Kathy Regenia Ford | **$500** |

## V.   CONCLUSION

Plaintiff's request is well within what's permitted under controlling law. The Court should grant its petition for $5 million in fees and costs and $60,000 in class representative awards.

---

[76] *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Dated: May 3, 2017.

By: */s/ Jordan M. Lewis*
    Jordan M. Lewis (FBN: 97997)
    **Jordan Lewis, P.A.**
    4473 N.E. 11th Avenue
    Fort Lauderdale, FL 33334
    jordan@jml-lawfirm.com

    -and-

    John J. Uustal (FBN: 73547)
    Michael A. Hersh (FBN: 0056019)
    **Kelley Uustal, PLC**
    500 North Federal Highway
    Suite 200
    Fort Lauderdale, Florida 33316
    Telephone:   (954) 522-6601
    Facsimile:   (954) 522-6608
    Email:      jju@kulaw.com
                mah@kulaw.com